

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

SD/MSA                                    *271 Cadman Plaza East*
                                          *Brooklyn, New York 11201*

                                          January 9, 2014

<u>By ECF and Hand</u>

The Honorable Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

             Re:    United States v. Damian Hardy and Eric Moore,
                    <u>Criminal Docket No. 04-706 (S-1) (FB)</u>

Dear Judge Block:

             By this letter, the government respectfully requests for the Court to order an
anonymous jury for the trial of this case, which is scheduled to begin on March 23, 2015.

             Based on the arguments set forth below, the government respectfully requests that
(1) the identities of all prospective jurors, including their names, addresses and places of
employment, not be revealed to either the parties or the parties' attorneys, and (2) from the time
each juror is empaneled until the conclusion of the trial, the jurors eat lunch together and be
escorted by representatives of the United States Marshals Service between the courthouse and a
central undisclosed location each day and at all times during recesses.   These precautions are
necessary to ensure that the jurors are free from interference by the defendants and their criminal
associates.   Moreover, these precautions will not deprive the defendants of their right to
meaningful <u>voir</u> <u>dire</u> or cause any other prejudice.

             I.     <u>Legal Framework</u>

             The Second Circuit has repeatedly upheld the use of anonymous juries "when
genuinely called for and properly used."   <u>United States v. Vario</u>, 943 F.2d 236, 239 (2d Cir.
1991).   The district court has broad discretion to determine whether to grant an anonymous jury.
<u>United States v. Aulicino</u>, 44 F.3d 1102, 1116 (2d Cir. 1995).   A decision to empanel an
anonymous jury must "receive close judicial scrutiny and be evaluated in the light of reason,

1

principle and common sense." United States v. Thomas, 757 F. 2d 1359, 1363 (2d Cir. 1985). The Second Circuit has further stated that "courts must protect the integrity of criminal trials" against attempted jury tampering "whether it emanates from defendants' enemies, from their friends, or from neither." United States v. Borelli, 336 F.2d 376, 392 (2d Cir. 1964), cert. denied, 379 U.S. 960 (1965).  Since Borelli, the Second Circuit has repeatedly acknowledged that anonymous juries often are necessary to protect the integrity of trials and to ensure a fair and impartial jury. See, e.g., Vario, 943 F.2d at 236.

The Second Circuit has adopted a two-step process for district courts to follow in connection with empaneling an anonymous jury. A district court should first determine whether there is strong reason to believe that the jury needs protection.   If there is, the court should then take reasonable precautions to minimize any prejudice that might arise from an anonymous jury. See, e.g., United States v. Thai, 29 F.3d 785, 801 (2d Cir. 1994); United States v. Paccione, 949 F.2d 1183, 1192 (2d Cir. 1991); United States v. Barnes, 604 F.2d 121, 140-41 (2d Cir. 1979).

Five factors are relevant to determining whether an anonymous jury is warranted:

(1) the seriousness of the charges; (2) the dangerousness of the defendant[s]; (3) the defendant[s'] ability to interfere with the judicial process by [themselves] or through [their] associates; (4) previous attempts to interfere with the judicial process by the defendant[s] or [their] associates; and (5) the amount of public and media attention expected during the trial that might expose the jurors to extraordinary pressures that could impair their ability to be fair.

United States v. Cacace, 321 F. Supp. 2d 532, 534 (E.D.N.Y. 2004); see also Thai, 29 F.3d at 801; Paccione, 949 F.2d at 1192-93; Vario, 943 F.2d at 240; United States v. Tutino, 883 F.2d 1125, 1132-33 (2d Cir. 1989); United States v. Vernace, 11 CR 05 (S–1) (SLT), 2013 WL 142373, at *3 (E.D.N.Y. Jan. 11, 2013).   In considering these factors, a court can rely on the government's proffer of facts showing that the jury needs protection.   See Vernace, 2013 WL 142373, at *3 (citing Wong, 40 F.3d at 1376-77); United States v. Persico, No. 10 CR 147 (SLT), 2012 WL 1188243 (E.D.N.Y. April 6, 2012) (same).[1]

_____

1      Notably, in the Eastern District of New York, courts have consistently empaneled anonymous juries in appropriate cases. See, e.g., United States v. Lindsey McDonnell, et al., No. 04 CR 203 (ARR), 2005 WL 1544804 (E.D.N.Y. July 1, 2005); United States v. Cacace, 321 F. Supp. 2d 532 (E.D.N.Y. 2004); United States v. Bellomo, 263 F. Supp. 2d 557 (E.D.N.Y. 2003); see also United States v. Dwayne Stone, No. 05 CR 401 (ILG) (E.D.N.Y. 2007); United States v. Ronell Wilson, No. 04 CR 1016 (NGG) (E.D.N.Y. 2006 and 2013); United States v. Legrano, No. 93 CR 1231 (ARR) (E.D.N.Y. 1995).

## II.    The Jury Requires Protection in This Case

### a.    The Seriousness of the Charges

The seriousness of the charges, which include seven murders, attempted murder, kidnapping and robbery, justifies an anonymous jury in this case.   These charges mainly stem from the activities of the Cash Money Brothers ("CMB"), a violent drug gang based in the Lafayette Gardens housing development in Bedford Stuyvesant, Brooklyn, which the defendant Damon "World" Hardy and others founded in the early 1990s and that Hardy eventually led. Under Hardy's leadership, CMB members distributed crack cocaine and other drugs in and around Lafayette Gardens, eventually building the gang into a powerful organization that exercised almost total control over the narcotics trade in the area.   To do so, the CMB engaged in violent drug wars with rival drug crews that resulted in numerous shootings.   During the CMB's existence, the defendant Aaron "Ebay" Granton was Hardy's most trusted enforcer and gunman.

In 1999, while Hardy was incarcerated, his brother Myron Hardy was shot and killed in Lafayette Gardens.   Hardy and other CMB members believed that a rival drug dealer named Ivery "Peanut" Davis and other members of his drug organization were responsible for the murder.   The CMB believed that the murder was an attempt by the rival crew to take back the drug business in the area.

Immediately after Myron Hardy was shot, while Myron Hardy still lay wounded in the hospital, Damion Hardy, from prison, began directing his gang members to exact revenge. Hardy ordered the CMB to murder Darryl Baum, James Hamilton, Tyrone Baum and Ivery Davis. All four were gunned down by CMB members.   Davis's killing also resulted in the death of an innocent bystander, Johan Camitz.   At Hardy's direction, Granton acted as the triggerman in the killings of Darryl Baum, Hamilton and Davis.   Another of CMB's hit men, also acting under Hardy's direction, shot and killed Tyrone Baum.

In addition to the aforementioned five murders, the superseding indictment charges Hardy with the 1999 murder of Michael Colon.   For that killing, Hardy ordered a junior gang member to shoot and kill Colon after Hardy had been humiliated at a roller skating rink. Furthermore, Granton is charged with the 2001 killing of Troy Singleton, a contract murder unrelated to the affairs of the CMB.

Hardy is also charged with conspiring and attempting to murder a state-court witness against a fellow CMB member charged with murder, and conspiring and attempting to murder another individual who feuded with CMB.   Hardy is further charged with kidnapping and robbing an individual in California and ordering and directing the kidnapping and attempted robbery of a drug dealer in Queens, New York.   The latter kidnapping was carried out by a group that included James Sessoms and Kenwayne Jones, CMB members convicted of robbery and kidnapping charges after trial in the Eastern District of New York.   See United States v. Sessoms, et al., Criminal Docket No. 04-706 (DGT).

For these crimes, the defendants face a mandatory life term of incarceration if convicted.  See 18 U.S.C. § 1959(a)(1).   The seriousness of the offenses and the risks the defendants face here -- such as the prospect of dying in prison -- "create[s] significant incentives to threaten jurors."  United States v. Gotti, No. 02 CR 743 (RCC), 2004 WL 2274712, at *2 (S.D.N.Y. Oct. 7, 2004) (empaneling anonymous jury).   This factor thus weighs heavily in favor of empaneling an anonymous jury in this case.

### b.   The Defendants' Dangerousness

There is ample evidence of the defendants' dangerousness.   As set forth above, the trial evidence in this case will establish not only the defendants' membership in a violent criminal enterprise, but will also "depict a pattern of violence by the defendants and [his] associates such as would cause a juror to reasonably fear for his own safety."  Vario, 943 F.2d at 241.

In addition to the sheer number of homicides for which Hardy and Granton are responsible, many of which occurred within a two-year time span, the manner in which the defendants committed them demonstrates their extreme dangerousness.   Hardy ordered others to carry out the murders for him, demonstrating the reach of his criminal influence and the lengths to which those loyal to him would go.   The murders were also planned in advance; CMB members discussed the murders beforehand, established a plan for carrying them out and ultimately committed several of them as a group.   Granton, for his part, is charged with committing four murders on command, one of which involved executing a complete stranger as a murder-for-hire scheme.

The defendants' and their organization's willingness and ability to commit the most serious of crimes, and their planning and execution of the homicides as an organized group of killers demonstrates their dangerousness and the need for the jurors' anonymity.   Furthermore, Hardy's ability to have others commit crimes for him will undoubtedly cause concern among the jurors, and an additional reason why an anonymous jury is appropriate.

### c.   The Defendants' Interference with the Judicial Process

At trial, the government will present evidence that Hardy and the CMB have previously attempted to interfere with the judicial process by attempting and threatening to kill witnesses.   For example, in 1994, Hardy ordered a CMB associate to shoot a witness who had testified against another CMB associate who was charged with murder.   For that retaliation against a witness, Hardy is charged in the instant indictment with conspiracy to commit murder and attempted murder.   Again in 1996, Hardy interfered with the judicial process by threatening another potential witness at gunpoint.   As a result of that act, on January 9, 1997, Hardy was convicted of tampering with a witness, a class E felony.   In addition, on July 30, 1998, Hardy pleaded guilty to attempted assault, a class E felony, for firing a gun at uniformed New York City Police Department officers.   The government further anticipates that it will elicit testimony from former CMB members that the gang considered witness intimidation to be necessary to protecting members from arrest and prosecution.

4

Moreover, because of the breadth and notoriety of the CMB, there are associates who remain at large and loyal to both defendants.   Indeed, during the course of trial preparation, several of the government's witnesses have voiced strong concerns about testifying at the upcoming trial for fear of reprisals by the defendants and their associates.   The existence of organization associates at large who could carry out acts of violence against or threaten jurors, and Hardy's demonstrated desire and ability to interfere with the judicial process through violence and threats he ordered others to carry out or carried out himself, weighs heavily in favor of protecting the jurors' identities.

     d.  The Media Attention

Finally, based on the notoriety of the CMB and its members, and the case's lengthy procedural history, the upcoming trial will attract media coverage.   Notably, the 2008 trial of co-defendant Abubakr Raheem received considerable media attention, including articles in the New York Daily News.   Since the 2008 trial, the case has continued to receive media attention including articles concerning the competency of Hardy and a lengthy article in a popular music magazine in 2013.   Moreover, because of the severity of the crimes, which include seven murders, there will certainly be press attention.   An anonymous jury is therefore required to protect the jurors' privacy.

     III.   The Use of an Anonymous and Partially Sequestered Jury Will Not Prejudice the Defendants

Once a district court determines that there is strong reason to believe that a jury needs protection, it may empanel an anonymous jury, provided that it takes reasonable precautions to minimize any potential prejudice to the defendants.   Thai, 29 F.3d at 801; United States v. Amuso, 21 F.3d 1251, 1265 (2d Cir. 1994); Paccione, 949 F.2d at 1192; Vario, 943 F.2d at 239; Tutino, 883 F.2d at 1132; Persico, 832 F.2d at 717-18; United States v. Thomas, 757 F.2d 1359, 1365 (2d Cir. 1985).   A defendant has two legitimate concerns that are potentially affected by a decision to empanel an anonymous jury: (1) the right to make informed choices during the jury selection process; and (2) the right to be tried by jurors who are not prejudiced by reason of their anonymity.   As explained below, both of these concerns easily can be addressed.

     a.  Empaneling an Anonymous Jury Does Not Burden the Defendants' Ability to Make Informed Choices During Jury Selection

Although a defendant has the right to a meaningful voir dire of potential jurors, see Rosales-Lopez v. United States, 451 U.S. 182, 188 (1981), the decision as to the questions to be asked in voir dire largely rests within the informed discretion of the trial court.   See United States v. Silva, 715 F.2d 43, 50 (2d Cir. 1983) (absent a clear abuse of discretion, trial court's ruling on questions to be asked will not be disturbed), overruled on other grounds by United States v. FNU LNU, 653 F.3d 144, 151 (2d Cir. 2011); Barnes, 604 F.2d at 140 ("As long as a defendant's substantial rights are protected by a voir dire designed to uncover bias as to issues in the cases and

as to the defendant himself, then reasonable limitations on the questioning should not be disturbed on appeal."). Indeed, as Judge Glasser has noted, "[t]he jury selection process (voir dire) is not a matter of constitutional dimension and the selection of an anonymous jury was implicitly held to be constitutional in Barnes." United States v. Gotti, 777 F. Supp. 224, 227 (E.D.N.Y. 1991) (citation omitted).

The information that will be kept from the parties and counsel if this motion is granted is not meaningful in the jury selection process. Names, exact addresses and places of employment of the prospective jurors are not necessary to making an informed choice. Information regarding the general neighborhoods in which the prospective jurors live and the general nature of their work is sufficient. The common practice in this district of extensive voir dire further acts to safeguard the rights of the defendants.

### b. Empaneling an Anonymous Jury Will Not Diminish the Defendants' Presumption of Innocence

Numerous courts have recognized that where anonymity is necessary, jurors can receive an instruction from the court explaining the measures imposed in a neutral way in order to prevent the jury from drawing any negative inference. Although the Due Process Clause of the Fifth Amendment protects the presumption of innocence, "there is no per se rule that it may not be burdened." Thomas, 757 F.2d at 1364. Here, the burden is slight compared to the Court's interest in safeguarding the integrity of the judicial process and, in any event, can be minimized or even eliminated through a proper jury instruction. Most commonly, courts have explained to jurors that their privacy and their identities require protection from the media and the public. See, e.g., Thai, 29 F.3d at 801; Amuso, 21 F.3d at 1265. In some cases, the district court has explained the jury's anonymity by telling prospective jurors that anonymity would allow them to feel more comfortable in giving candid answers to the personal questions asked in voir dire and in the jury questionnaires. In one well-known case, Judge Trager explained to prospective jurors that their names, addresses and places of employment would be kept confidential to protect their privacy from press inquiries and others not connected with the case. See United States v. Nelson, No. 94 CR 823 (DGT). Either of those examples would provide a credible explanation to prospective jurors in this case.

As for partial sequestration, if ordered by the Court, the government proposes that the jury be told that transportation is being provided to protect their privacy and to ensure that the trial can proceed expeditiously. This explanation has been routinely given in cases where transportation to and from court is provided. See, e.g., United States v. Galestro, No. 06 CR 285 (ARR), 2008 WL 2783359, at *3, n.3 (E.D.N.Y. July 15, 2008) ("Jurors are generally told that such steps are not unusual and are taken to ensure their privacy and impartiality in light of the media and public attention the trial is expected to receive."); United States v. Gammarano, No. 06 CR 0072 (CPS), 2007 WL 2077735, at *6 (E.D.N.Y. July 18, 2007).

6

CONCLUSION

For the reasons set forth above, the Court should order that (1) the identities of all prospective jurors, including their names, addresses and places of employment, not be revealed to either the parties or the parties' attorneys, and (2) from the time each juror is empaneled until the conclusion of the trial, the jurors eat lunch together and be escorted by representatives of the United States Marshals Service between the courthouse and a central undisclosed location each day and at all times during recesses.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By:      _____/s/_____
Soumya Dayananda
Mathew Amatruda
Rena Paul
Assistant U.S. Attorneys
718-254-6147/7996/6044

cc:     Clerk of Court (FB)
        All Defense Counsel (by ECF)